William McMurtry v. Louisville, New Orleans & Texas Railway Co.

1. Contributory Negligence.   *Practice.   Instruction for defendant.*
    In actions of damages for negligence, the alleged negligence is a mixed question of law and fact, the facts to be found by the jury; but where the evidence does not prove or tend to prove liability, or if the evidence and inferences therefrom make it clear that plaintiff's negligence produced the injury or contributed as the proximate cause thereof, it is proper for the court to direct a verdict for defendant.

2. Same.   *When plaintiff's negligence need not be pleaded.*
    Where contributory negligence is shown by plaintiff's own proof, it will avail defendant, and it is no objection to the defense that it was not specially pleaded.

3. Same.   *Railroads.   Attempt to board moving train.   Injury.   Case in judgment.*
    On a dark night, while snow was falling, defendant's passenger train, signalled at a flag station, either did not stop or failed to stop long enough, and while it was moving out, plaintiff, an old man who was numb with cold, in attempting to get on, seized the platform railing with his left hand, holding a valise in his right.   By a sudden jerk of the train he lost his footing, but clung to the railing.   The train porter, the only employé who saw him, took his valise, and repeatedly urged him to turn loose, but he held on, the speed constantly increasing, and was dragged 150 yards, when he fell and was injured.   No effort was made to stop the train.   Plaintiff testified that he held tenaciously to the railing because he thought he would be crushed to death if he fell.   *Held,* that he was guilty of such contributory negligence as debarred a recovery for the injury, and that an instruction to find for the defendant was proper.

4. Same.   *Failure to stop sufficient time.   Plaintiff's negligence.*
    Although the failure of the train to stop a reasonable time was a breach of defendant's duty, this does not relieve plaintiff from the consequences of his own rash and negligent conduct.

From the circuit court of Warren county.

J. D. Gilland, Esq., Special Judge, by consent of parties.

The facts are stated in the opinion.

*Dabney, McCabe & Anderson,* for appellant.

1. The defense of contributory negligence is an affirmative one, and cannot be availed of unless pleaded by the defendant.   R. R.

*Co.* v. *Horst*, 93 U. S. 291 ; *R. R. Co.* v. *Gladmon*, 15 Wall. 401 ; *Gas Light Co.* v. *Montgomery Ry. Co.*, 5 South. Rep. 735 ; *Hickman* v. *Ry. Co.*, 66 Miss. 154 ; *Vicksburg* v. *McLain, ante,* p. 4.

2. Plaintiff was not guilty of contributory negligence. Boarding a moving train is not necessarily contributory negligence, but whether it is or not is a question of fact, not of law. Beach on Neg., §§ 152 and 155. As a general proposition, cases of negligence present a mixed question of law and fact. The judge defines negligence in the charges, and the jury applies the definition. Ib., § 161.

3. If mistaken in this, yet if plaintiff's negligence was not *the proximate cause,* the *causa causans* of the injury, it cannot be availed of as a defense, and the appellant is entitled to recover. Ib., §§ 3 and 321 ; *Gas Light Co.* v. *Ry. Co., supra ;* Pattison Ry. Ac. Law, § 23.

The act of appellee in starting the train at the time and in the manner set out in the evidence was the proximate cause of the injury, and this act of the defendant was negligent. If the train did not stop, this was certainly negligence. If it slowed up and thus invited passengers to get aboard, it should have maintained this slow motion long enough to allow those whom it invited to enter to do so with safety. It must not set a man-trap and play with human life. *Conner* v. *Street Ry. Co.*, 4 N. E. Rep. 441.

4. But if mistaken in the foregoing positions, yet after the defendant's servants found plaintiff in his perilous position, it matters not how negligent he may have been in putting himself there, it should have exercised care to prevent the injury. The whole accident occurred in the presence of an agent and servant of the company. He did nothing to prevent the injury. Did not pull the plaintiff up to the platform—did not signal the train to stop—did not pull the bell cord—did nothing at all except to tell appellant to turn loose. The porter looked on with fascination and saw appellant dragged 150 yards until, from sheer exhaustion, he fell. Then, for the first time, the porter gave the signal to stop. It is therefore manifest that if appellee had exercised even the slightest care, after discovering plaintiff's peril, the injury would

have been averted.    Shear. & Redf. on Neg., § 36, *et seq.;* Thomp.
Neg., 1157.

*Murray F. Smith,* for appellee.

The undisputed facts, plainly stated, are these : With a valise in
his right hand, an old man, 65 years old, on a dark  night, boarded
a  moving  train, catching .with  his left  hand  the  banister with a
" death grip," because he knew that if he fell he would be  crushed
to death.

It was not necessary to plead the contributory negligence of the
plaintiff.    His own testimony showed this conclusively, and surely
the defendant can avail of the testimony of his opponent.    Special
pleadings are required to prevent the opposite party being taken by
surprise.    It is hard to conceive of a plaintiff being surprised by
the facts relied on and testified to by himself.    Besides negligence
and  contributory  negligence, when  the  facts  are  conceded, are
matters of law.    The jury have no other province but to find the
facts.    The authorities cited by appellant on this point do not sus-
tain his position.

It was the grossest contributory negligence to attempt to board
the moving train.    *Bardwell* v. *R. R. Co.,* 63 Miss. 577 ; *Dowell*
v. *R. R. Co.,* 61 Ib. 519 ; *Burrows* v. `Ry.` *Co.,* 63 N. Y. 556 ;
*Central R. R. Co.* v. *Letches,* 69 Ala. 106.

The failure to stop at the station did not relieve the plaintiff
from the duty to exercise ordinary care.    Although the company
may have been negligent in this respect, it was still the duty of the
plaintiff to use prudence in attempting to get aboard the train.
*R. R. Co.* v. *Le  Gierse,* 51  Tex. 189 ; *R. R. Co.* v. *Huston,* 95
U. S. 697.

No negligence can be imputed to the company because of the
action of the porter.    After the plaintiff had deliberately put him-
self in peril, his dereliction cannot be excused because a man who
sees him in that position and who, as any other man would be, is
excited, possibly did not do the exact thing at the right time to
prevent or mitigate the injury.    Besides, it does not appear that the
advice of the porter was not the best under the circumstances.

Again, the porter is not the man to signal the train to stop or to control its motion. The conductor and engineer are the parties.

WOODS, C. J., delivered the opinion of the court.

To the declaration filed by plaintiff in the court below, the plea of the general issue was interposed. After plaintiff had introduced all his evidence and rested, the defendant corporation moved to exclude all the evidence from the consideration of the jury, because the evidence neither proved, nor tended to prove liability on the part of defendant, and asked the court to instruct the jury to find for defendant, which was thereupon done. This action of the court was based upon the idea that all the evidence taken together showed conclusively that there had been such contributory negligence upon the part of plaintiff as to demonstrate that defendant was not liable, —that there were no facts either proving or tending to prove liability (*i. e.*, that the injuries complained of were clearly shown by the facts—the undisputed facts—to have been the result of plaintiff's negligence), and that hence there was nothing to submit to the determination of a jury, but only a question of law to be settled by the court.

Negligence is a mixed question of law and fact: the court declares what is negligence, and the jury finds the facts, in the particular case, and reports to the court what such facts show upon the question of negligence, viewed in the light of what the court has declared negligence to be. Now in this, as in suits for malicious prosecution and the like cases, where the question is a mixed one of law and fact, it is not only permissible, but, in proper cases, it is the duty of the court to assume the responsibility of withdrawing the case from the jury, and of deciding it purely as a legal question. When the evidence neither proves, nor tends to prove liability on the part of a defendant, or where the facts shown in evidence, and all the inferences from those facts, make it clear that plaintiff's own negligence produced, or contributed, as the proximate cause, to produce the injury for which recovery in damages is sought, then, and in every such case, the question is for the court alone. Says Beach, in his work on Contributory Negligence, p. 454, under the

title, *Contributory* negligence as matter of law : "What amounts to
negligence is, as we have already seen, a question of law.  It is
for the court to say, in a majority of instances, what is, and what
is not, negligence as an abstract proposition.   When, therefore, the
facts of a given case are undisputed, and the inferences, or conclu-
sions to be drawn from the facts, indisputable ; when the standard
of duty is fixed and defined, so that a failure to attain it is negli-
gence beyond cavil, then contributory negligence is matter of law."
Tested by this rule, was the learned judge below warranted in his
action in taking the case from the jury and determining it alone ?
A proper answer will require an examination of the salient points
in the evidence.

We find this state of facts on looking into the record : Appel-
lant was at Hollandale, a station on appellee's line of railway in
Washington county, and was desirous of embarking on the first
train for Vicksburg.   Hollandale was, for all the purposes of this
case, a flag-station, where tickets were not sold nor any accommo-
dations furnished intending passengers.   The train which appellant
desired to take passage on was due to pass Hollandale after night-
fall on the 27th day of January, 1889, and was actually flagged
down for appellant at that station at eleven o'clock that night,
after long waiting by him in the cold and darkness of a winter's
night, the train being delayed.   While the train was moving, either
after having been stopped and again put in motion, or without ever
having stopped at all, appellant endeavored to get upon the train
under these circumstances, viz: the night was cold, very dark, and
snow was falling rapidly ; while the train was in motion appellant
made an effort to enter one of the cars by seizing, with what he
denominates " a death-grip," one of the iron railings inclosing the
steps to the car-platform, with his left hand, his right hand being
encumbered with a valise, and occupied with the valise for some
time after seizing the railing with his left ; a sudden jerk of
the train caused him to miss the platform-step, and to lose his
balance ; he clung to the railing with his left hand, holding his
valise in his right, and was jerked and dragged on his feet and
legs over the ends of the projecting cross-ties with constantly

increasing rapidity, by reason of the constantly accelerated speed of the moving train. After being dragged thus some distance, appellant gave his valise to a porter, and endeavored, by then seizing the railing, with both hands, to raise himself up and plant himself upon the step, but was unable to do so, and finally, despairing of getting aboard the train, he pushed himself off and fell on the cross-ties of an adjacent switch, and so received the injuries complained of. The distance over which he was dragged was one hundred and fifty yards, and, from first to last, appellant was directed by the porter to turn loose his grip, and that he only did so at the end of said distance.

We have, thus it appears, the case of a man advanced in life— sixty-five years of age—and no longer young and active, benumbed with cold, by his long waiting without fire, on this freezing night, encumbered by a valise carried in his right hand, on a dark night, in the midst of rapidly-falling snow, and fully aware of the peril to which he was about to expose himself, undertaking, without known necessity, the always hazardous feat of boarding a moving train. Nay, more, it was the rash attempt to make this dangerous effort by a man thoroughly conscious of the peril he exposed himself to, and yet continuing to encumber himself and deny himself invaluable aid from his right hand, by continuing to hold to his valise.

We have said appellant took *knowingly* the foreseen perils of an ill-advised and extremely dangerous freak of attempting to board a moving train under such circumstances as have just been detailed, for he says : " I laid hold of the hand-rails of the coach with a death-grip, as I thought, and knew that if I fell there I would be crushed to death in an instant." Shall this appellant, who seized this railing to board a moving train, under the most unfavorable circumstances that marked his effort, knowing that a failure to execute his purpose meant instant and horrible death—shall this appellant be heard to complain that he was improperly treated and his complaint erroneously disposed of by the able and accomplished judge who withdrew the case from the jury's consideration, and determined that as a question of law the defendant was not liable

for an injury directly attributable to the recklessness of the impatient traveller?    The conscience and judgment of every enlightened jurist will answer, no!    If impatient travellers will persist ·in "making leaps at flying trains," and knowingly taking the chances of frightful hurt, or death itself in one of its most horrible forms— that of being ground into quivering pieces under the wheels of a rushing train—and disaster befalls, they must understand that the consequences of their madness must be visited upon their own heads.

Indisputably the train should have been stopped a reasonable time, and for a failure to do so, the defendant corporation was guilty of a breach of duty.    But that no way affects the legal aspects of this case as appellant's own evidence presents it. See *Letcher* v. *Central R. R. & Banking Co.,* 69 Ala. 106 ; *Solomon* v. *Manhattan R. R. Co.,* 103 N. Y. Appeals, 437.

In the line and in the spirit of the cases of *Bardwell* v. *M. & O. R. R.,* 63 Miss. 509, and *Dowell* v. *V. & M. R. R.,* 61 Ib. 519, are the views we have herein advanced.    The doctrine is not new and should not be surprising.

The counsel for appellant insists with much earnestness and skill that for a preliminary error of the court below, which we will now notice, the judgment must be reversed.    The contention of counsel is, that the defense of contributory negligence is an affirmative one, and was not available for defendant in this case as it was not set up in a special plea.    We think counsel misapprehend.

If plaintiff's pleadings and proofs had left the case blank as to his contributory negligence, and it had become necessary for defendant to take the affirmative and show as a defense plaintiff's contributory negligence, there, we suppose, it would be the practice to require such defense to be set up under a special plea.    But when, as in this case, the contributory negligence is palpably made to appear by the plaintiff's evidence, we are aware of no rule, nor can we see the reason for any rule, requiring a defendant to either plead or prove such contributory negligence.

*Affirmed.*